IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARIA MARQUEZ HERNANDEZ, ITZEL MARQUEZ HERNANDEZ, by and through her next friend Luis Marquez, and ADRIANA ROMERO, by and through her next friend Alejandra Castillo, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | 4:14CV3178 |
| V. | ) ) | |
| DAVE HEINEMAN, Governor of Nebraska, in his official capacity, NEBRASKA DEPARTMENT OF MOTOR VEHICLES, and RHONDA LAHM, Director of the Nebraska Department of Motor Vehicles, in her official capacity, | ) ) ) ) ) ) ) ) ) | FINDINGS AND RECOMMENDATION |
| Defendants. | | |

This matter is before the Court on Plaintiffs' Motion to Remand (filing 15). For the reasons explained below, the undersigned will recommend to Chief United States Judge Laurie Smith Camp that the motion be granted.

## BACKGROUND

Plaintiffs are young immigrants residing in Nebraska who were granted "deferred action" under the Deferred Action for Childhood Arrivals ("DACA") program. In general, "deferred action" is a form of prosecutorial discretion, through which immigration officials make a discretionary decision not to remove an individual from the United States during a specified period of time.

On August 26, 2013, Plaintiffs filed a first amended complaint in the District Court of Lancaster County, Nebraska asserting claims under Nebraska's Uniform Declaratory

Judgments Act and Nebraska's Administrative Procedures Act. Plaintiffs challenged the State of Nebraska's policy of denying driver's licenses to applicants with DACA-related deferred action status, while allowing other non-U.S. citizens with deferred action status to obtain licenses. Plaintiffs suggested that Defendants' actions conflicted with the federal REAL ID Act of 2005,[1] which Nebraska adopted in 2011, and Neb. Rev. Stat. § 60-484.04. Specifically, the first amended complaint alleged that Defendants (1) exceeded the scope of their authority granted by state law by implementing a rule that denied driver's licenses to DACA recipients; (2) failed to properly adopt and promulgate rules and regulations to determine the eligibility of DACA recipients for a Nebraska driver's license; and (3) violated the Due Process clause of Article I, section 3 of the Nebraska constitution by denying licenses to DACA recipients without a factual foundation in the record of proceedings, rending their actions unreasonable and arbitrary. (Filing 1-1.)

A year later, on August 28, 2014, Plaintiffs filed a second amended complaint in state court, adding a fourth cause of action under Nebraska's Uniform Declaratory Judgments Act. The fourth cause of action alleges:

> Defendants' decision to deny drivers' licenses to DACA recipients under the circumstances described herein violates the Equal Protection Clause of Article I, section 3 of the Nebraska State Constitution. Defendants' policy categorically denying licenses to DACA recipients while permitting similarly situated applicants to obtain licenses is arbitrary, unreasonable, motivated by an improper purpose, and lacks a rational relationship to any legitimate state interest. To the extent that Defendants are relying on an interpretation of state law, including but not limited to Nebraska Revised Statute § 60-484.04, to deny licenses to Plaintiffs and other DACA recipients, that interpretation as applied to Plaintiffs and other DACA recipients is arbitrary, unreasonable, motivated by an improper purpose, and lacks a rational relationship to any legitimate state interest.

---

[1] The REAL ID Act sets minimum standards that states must meet in the issuance of driver's licenses in order for the licenses to be accepted for official purposes of the federal government. *See* 49 U.S.C. § 30301. The Act provides, in part, that before issuing a driver's license, the state must obtain documentary evidence that the applicant has approved deferred action status. *Id*.

(*Id*.) Based on this state equal protection claim, Defendants removed the action to this Court on the basis of federal question jurisdiction.[2] Plaintiffs now seek to remand the case to state court, arguing that the second amended complaint does not include any federal claims or raise any significant federal issues.

## DISCUSSION

"A defendant may remove a state law claim to federal court when the federal court would have had original jurisdiction if the suit originally had been filed there." *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005) (citation omitted). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." *Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). Federal courts are to resolve all doubts as to the propriety of exercising federal jurisdiction in favor of remand. *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

"Removal based on federal question jurisdiction is usually governed by the well-pleaded complaint rule." *Phipps*, 417 F.3d at 1010 (internal quotation omitted). The well-pleaded complaint rule "provides that federal jurisdiction may be invoked only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*. This rule "makes the plaintiff the master of the claim, allowing the plaintiff to avoid federal jurisdiction by exclusive reliance on state law." *Id*. Defendants are "not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law. *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000).

Still, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id*. However, "the cases that fit

---

[2] Defendants concede that Plaintiffs' first amended complaint did not raise a federal issue. (Filing 16 at CM/ECF p. 2.)

within this doctrine are a special and small category" and the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Ponec v. Guy Strevey & Associates*, No. 8:14CV114, 2014 WL 3547011, *2 (D. Neb. July 16, 2014) (internal quotations omitted). The relevant question is "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

Plaintiffs assert that their equal protection claim is based on Defendants' actions in accepting federally-issued Employment Authorization Documents ("EADs") from all non-citizen applicants as sufficient documentation to receive a Nebraska driver's license, except from DACA recipients. In Nebraska, before being issued a driver's license, an applicant must "present valid documentary evidence that he or she has *lawful status* in the United States." Neb. Rev. Stat. § 60-484.04 (emphasis added). Defendants accept EADs as proof of "lawful status" for purposes of obtaining a driver's license, unless the applicants are DACA recipients. The second amended complaint alleges "the DMV accepts all EADs bearing any category code as sufficient evidence of lawful status required for a driver's license" except the code designated for DACA. The complaint further alleges that the DMV issues "licenses to applicants who are similarly situated to Plaintiffs in that they do not have a 'formal immigration status' conferred by Congress under the Immigration and Nationality Act, including but not limited to those who have a pending application for asylum, those who have parole status, those who have Deferred Enforced Departure, those who have Temporary Protected Status, those who have applied for adjustment of status, and those who have deferred action status other than through the DACA program." (Filing 1-1 at CM/ECF p. 52.) The complaint states that this "policy is contrary to the statutory authority provided by Neb. Rev. Stat. § 60-484.04," which was passed "in order to bring the state in compliance with the REAL ID Act provisions." (*Id*.)

Defendants contend that adjudication of Plaintiffs' equal protection will require an inquiry regarding the federal government's alleged position that DACA grantees lack "lawful status" relative to other aspects of immigration law. Defendants further maintain that resolution of Plaintiffs' equal protection claim raises a federal issue because the differential treatment challenged by Plaintiffs is the State's denial of driver's licenses to non-U.S. citizen

4

applicants who lack "lawful status" in the United States, versus its granting of driver's licenses to non-U.S. citizen applicants who possess "lawful status." Therefore, according to Defendants, the equal protection analysis will necessarily include the issue of whether Plaintiffs, as beneficiaries of the federal government's DACA program, are similarly situated from an immigration classification perspective to other non-U.S. citizen applicants for purposes of receiving Nebraska driver's licenses.

Plaintiffs dispute Defendants' classification of their equal protection claim. Plaintiffs maintain that the question presented is not, as Defendants suggest, whether Plaintiffs have lawful status. Rather, according to Plaintiffs, the heart of their claim is simply whether Defendants have any legitimate rationale for denying DACA applicants driver's licenses, while permitting other non-U.S. citizens, including others with deferred action status, to obtain such licenses.

Having reviewed the parties' submissions and the law on the matter, the undersigned concludes that Plaintiffs' equal protection claim does not necessarily raise a substantial and disputed federal issue. An inquiry into the issue of whether Plaintiffs have "lawful status" is not necessary to resolve the equal protection claim asserted. The issue here is whether there is a rational basis for the State's policy of denying driver's licences to DACA recipients, while allowing other non-U.S. citizen applicants to obtain such licenses. It seems that Defendants' assertion that Plaintiffs' lack "lawful status" under federal immigration classifications is, in reality, a defense to Plaintiffs' allegations that there is no rationale basis for the differential treatment. However, it is well-established that federal defenses do not provide a basis for removal "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Catepillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Therefore, it will be recommended that Plaintiffs' Motion to Remand be granted.

The undersigned also concludes, however, that an award of costs is not warranted. "Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C. § 1447(c)] only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants have presented objectively reasonable arguments in opposition to Plaintiffs' Motion to Remand,

and there is no evidence that removal of this action was an effort to delay resolution of this case. Therefore, the undersigned will not recommend that attorney's fees and costs be awarded.

Accordingly,

**IT IS HEREBY** recommended to Chief United States District Judge Laurie Smith Camp that Plaintiffs' Motion to Remand (filing 15) be granted.

A party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. Failure to timely object may constitute a waiver of any objection.

**IT IS ORDERED:**

**DATED November 17, 2014.**

BY THE COURT:

S/ F.A. Gossett
**United States Magistrate Judge**